## In re NEELY.

### (Circuit Court, S. D. New York. August 8, 1900.)

1. EXTRADITION—ISSUES IN PROCEEDING—ACT JUNE 6, 1900.

Under Act June 6, 1900, providing for the extradition of persons charged with violation of the criminal laws of any foreign country occupied by or under the control of the United States: "provided, further, that such proceedings shall be had before a judge of the courts of the United States only, who shall hold such person on evidence establishing probable cause that he is guilty of the offense charged," it is the sole function of the judge before whom such proceedings are had to determine the question of probable cause upon evidence which is competent under our laws, and it is not his province to enter upon the question whether the accused, if surrendered, will be accorded a fair and impartial trial.

2. SAME—PROBABLE CAUSE—SUFFICIENCY OF EVIDENCE.

In proceedings for the extradition of the defendant to Cuba to answer to a charge of embezzling public funds as a public officer, evidence that he was the head of the bureau of finance in the department of posts of the Island of Cuba, which bureau issued stamps to the postmasters of the island, and received the remittances therefor, and deposited the same in bank; that defendant personally received and receipted for such remittances, and directed the amount of each deposit, himself making up the packages therefor; and that during a considerable time the receipts, as shown by the books, uniformly exceeded the deposits,—is sufficient to establish probable cause, and warrant the holding of the defendant for extradition.

Proceedings for the Extradition to Cuba of Charles F. W. Neely. Hearing upon the merits.

Henry L. Burnett, U. S. Atty.

John D. Lindsay, for the accused.

LACOMBE, Circuit Judge. The various preliminary objections have been disposed of in the former opinion. Upon the hearing counsel for the prisoner offered to prove by witnesses that a fair and impartial trial cannot be secured to the prisoner in the Island of Cuba. Reliance is placed upon the report of the judiciary committee of the senate recommending the passage of the act of June 6, 1900, the concluding paragraph of which reads as follows:

"In order that there may be no vexatious exercise of the power of extradition under this act, it is provided that there shall be shown probable cause before a judge of the appropriate court who shall order the returns and surrender, but no such order shall be made until the judge shall be satisfied that the accused will have a speedy and fair trial."

If the statute had passed in the language recommended by the judiciary committee, there would be force in this argument; but the history of the enactment is conclusive against the conducting of any such investigation by this court. When the bill came from the house of representatives, the concluding sentences read as follows:

"Provided further, that such proceedings shall be had before a judge or a justice of the courts of the United States only, who shall hold such person on evidence establishing probable cause that he is guilty of the offense charged. If so held such person shall be returned and surrendered to the authorities in control of such foreign country or territory on the order of the secretary of state of the United States, and such authorities shall guarantee to such person a fair and impartial trial."

The judiciary committee of the senate reported in favor of "striking out all after the enacting clause," and substituting an enactment which should contain, inter alia, the following:

"Provided further, that before making such order of surrender and return the judge shall be satisfied that proper provision exists for securing to the accused a speedy and fair trial for such offense, where he will be informed of the nature and cause of the accusation, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his favor, and have the assistance of counsel for his defense."

Congress, however, rejected this amendment proposed by the judiciary committee, and passed the act in substantially the language above quoted from the house bill. Manifestly, therefore, this court should not enter upon the investigation proposed. Its sole function is to determine whether there is probable cause that the prisoner is guilty of the offense charged, such offense being one of those enumerated in the act. It will not be necessary to discuss the testimony covering the entire period of the prisoner's incumbency. Touching the six weeks from January 1, 1900, to February 10, 1900, the evidence is more compact and specific than it is for the other months. It appears that Neely was the head of the bureau of finance in the department of posts of the Island of Cuba. That bureau issued "stamped paper" (i. e. stamps, postal cards, stamped envelopes, etc.) to the bonded postmasters of the island, upon their requisitions, and received the remittances made by them to pay for the same. Such remittances came by registered mail usually, in the shape of drafts, warrants, cash, or money orders. The unbonded postmasters received stamps and paid cash. To the bonded postmasters there were sent receipts for their remittances, such receipts being torn out of a book containing stubs. Entries of such remittances were also made in a book called "Small Cash Book, Exhibit A." In this cash book were also entered the items of cash payments by unbonded postmasters. Deposits of these funds were made every 10 days in the North American Trust Company, the payments accumulating meanwhile in the safe. When a deposit was made, a deposit slip in the usual form was made out and turned in with the funds. Now, for the period from January 1, 1900, to February 10, 1900, we have the small cash book—Exhibit A—showing receipts of money from postmasters. George W. Marshall, who has been employed in the bureau continuously since February, 1899, testified under oath before the court that every entry in the book for that period is in his own handwriting; that he knew of the transaction at the time, having himself prepared the receipt for the postmaster, which Neely signed, and that his entry was accurately made. It is, of course, possible that, through error or oversight, or otherwise, other money may have been received and not entered; but that such amounts as are entered were received is sworn to positively by a witness having personal knowledge of the facts, and is wholly uncontradicted. These items aggregate $38,967.29. The teller or clerk in charge at the North American Trust Company testified to the deposits made during the same period, and that none others than those he swore to were made during that period. He produced the original deposit slips. The

witness Marshall, being shown these slips when on the stand, identified them, and swore that, except for a memorandum in Neely's handwriting on the slip of January 6, 1900, they were entirely in his own handwriting, and accurately represented the deposits made by him on the dates given. They are as follows: January 6, 1900, $4,000; January 10, 1900, $3,000; January 20, 1900, $5,700; January 30, 1900, $4,830; February 10, 1900, $6,907.57,—total, $24,437.57. The difference between receipts and deposits is $14,529.72. Some slight discrepancy by difference of time between receipt and deposit on the same day is, of course, to be expected; but the evidence of Marshall, direct and positive, not contradicted, or impeached, or qualified, or shaken on cross-examination, should satisfy any jury beyond reasonable doubt that $14,000, or thereabouts, of funds received from the sale of stamped paper was lost, stolen, or embezzled after it reached the bureau. It further appears that Neely was in charge of the bureau, and directed its business methods; that he himself opened the mail containing the money, and either wrote the receipts himself or signed those which Marshall prepared, and which were sent to postmasters; that he had constant access to the books, and examined them; that he frequently—almost daily—looked over the accumulating funds in the safe, doing them up in bundles for convenience of counting and deposit; that he himself directed what should be the amount of each deposit, after Marshall had reported how much loose silver there was in the drawer, and himself handed to Marshall sufficient currency or drafts to make up, with such loose silver, the amount he thus directed to be deposited; that, except for himself and Marshall (who has testified here to the correctness of his own transactions), there were changes in the personnel of the bureau, but that, as its records show, there was a uniform deficiency of deposits as compared with receipts from the beginning of Neely's administration until he left the island on leave April 28, 1900. It is, of course, possible that, while he was himself opening the mail, receiving the money, signing the receipts, handling the funds, counting them, moving them from drawer to drawer of the safe, and making them up for deposit, others, in the bureau or out of it, could have made away, during six weeks, with $14,000—over 35 per cent. of the total receipts—under his eyes, and almost out of his hands, without his knowledge or consent; but it is highly improbable. In the opinion of this court the government has abundantly shown that there is probable cause to believe that Neely is guilty of the offense of "embezzlement or criminal malversation of the public funds," he being at the time a "public officer" or "employé" or "depositary." Such an offense is obnoxious to the Penal Code in force in Cuba, article 401 of which provides that "the public employé who, by reason of his office, has in his charge public funds or property, and who should take (or consent that others should take) any part therefrom, shall be punished," etc. There is no merit in the contention that this article applies only to persons in the public employ of Spain. Spain having withdrawn from the island, its successor has become the "public" to which the Code, remaining unrepealed, now refers. The suggestion that under this Penal Code no public employé could be prose-

cuted or punished until his superior had heard the case, and turned the offender over to the criminal law for trial, is matter of defense, and need not be considered here. The evidence shows probable cause to believe that the prisoner is guilty of an offense defined in the act of June 9, 1900, and which is also a violation of the criminal laws in force in Cuba, and upon such evidence he will be held for extradition.

Two obstacles to his extradition now exist. He has been held to bail in this court upon a criminal charge of bringing into this district government funds embezzled in another district. He has also been arrested in a civil action brought in this court to recover $45,000, which, it is alleged, he has converted. When both of these proceedings shall have been discontinued, the order in extradition will be signed. This may be done on August 13th, at 11 a. m.